RAYMORE REALTY CO. v. PFOTENHAUER–NESBIT CO.

(Supreme Court, Appellate Division, First Department. June 2, 1911.)

1. SALES (§ 418*)—BREACH BY SELLER—DAMAGES.

The general rule of damages governing breach of contract to deliver on time does not limit recovery for delay in delivering brick of kind obtainable from the seller only, and contracted to be sold with knowledge that they were to be used in a building and that loss would result from a delay; the buyer being entitled to recover damages resulting directly and naturally from the breach.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1174–1201; Dec. Dig. § 418.*]

2. DAMAGES (§ 6*)—SALES—BREACH BY SELLER—CERTAINTY AS TO AMOUNT.

A buyer's right to recover damages flowing directly and naturally from the seller's delay in delivery is not defeated by impossibility of proving the exact amount.

[Ed. Note.—For other cases, see Damages, Cent. Dig. § 5; Dec. Dig. § 6.*]

3. SALES (§ 418*)—BREACH BY SELLER—DAMAGES—REMOTENESS.

Estimated damages sustained by a building contractor through being delayed by the owner's failure to furnish brick, in being prevented from doing work on other contracts, the owner agreeing to reimburse for such damages, are too remote to be recovered by the owner as damage for failure of the seller of the brick to deliver on time.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1174–1201; Dec. Dig. § 418.*]

4. SALES (§ 418*)—BREACH BY SELLER—DAMAGES.

The owner can recover for reimbursing the contractor on account of wages paid the workmen while idle.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1174–1201; Dec. Dig. § 418.*]

5. SALES (§ 418*)—BREACH BY SELLER—DAMAGES.

It was improper to award damage for lost rent, on the assumption that completion of the building was delayed on account of failure to deliver the brick, for a period equal to the delay in such delivery.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1174–1201; Dec. Dig. § 418.*]

Appeal from Trial Term, New York County. ·

Action by the Raymore Realty Company against the Pfotenhauer-Nesbit Company. Judgment dismissing the complaint, and plaintiff appeals. Reversed, and new trial ordered.

See, also, 139 App. Div. 126, 123 N. Y. Supp. 875.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, MILLER, and DOWLING, JJ.

Louis A. Jaffer, for appellant.
James W. Dean, for respondent.

MILLER, J. The action is for breach of contract. On the 1st day of August, 1909, the plaintiff entered into a written contract with the defendant for the purchase of "about 100,000" Roman brick, to be delivered when ordered. The defendant knew that the brick was intended for the courts, areas, and front of an apartment house, which the plaintiff was constructing on West 106th street, between Amsterdam avenue and Broadway, borough of Manhattan. The plaintiff ordered the entire quantity to be delivered forthwith, and when the contract was made the defendant was informed that loss would result to the plaintiff from delays in delivery. Wherefore a clause in the printed form of order prepared by the defendant, to the effect that it was "contingent upon strikes, accidents, or other delays beyond the control of the seller," was stricken out. The evidence tended to show that the plaintiff made repeated demands for the delivery of the brick, but that the deliveries were of small lots of a few thousand each from September 9, 1909, to December 11, 1909. The evidence also tended to show that, if the brick had been delivered when ordered, the building would

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

have been inclosed by October 1, 1909, but because of the delays it was not inclosed until the latter part of December or the forepart of January, and the plaintiff claims that it was thus delayed at least 2⅓ months in the completion of the building. It was impossible to obtain the kind of brick ordered in the market, or from any one but the defendant, and after commencing the use of the brick the plaintiff could not have substituted other brick without injuring the appearance of the building.

[1] The learned trial judge dismissed the complaint, for the reason that there was no proof of the difference between the contract price and the market price of similar brick at the time and place of delivery. But it is plain that the general rule of damage has no application to this case, and the question involved is whether there was any evidence of special damages which required the submission of the case to the jury. The general rule not being applicable, the plaintiff was entitled to recover such damages as were within the contemplation of the parties; i. e., those flowing directly and naturally from the breach.

[2] The impossibility of proving with mathematical exactness the amount of the damage sustained would not prevent a recovery, provided such damages were certain in their nature and in respect of the cause from which they proceed. Delafield v. Armsby, 131 App. Div. 572, 116 N. Y. Supp. 71, affirmed on opinion below 199 N. Y. 518, 92 N. E. 1083.

[3] The plaintiff claimed four items of damage, viz.: (1) $1,700, paid the building contractor as damages for delay; (2) $2,600, interest on the average value of the property during the 2⅓ months of delay claimed; (3) $486, the proportionate amount of taxes assessed on the property for that time; (4) $7,758, rentals lost by reason of the delay. The plaintiff did not have to pay taxes or interest because of the delay.

With respect to the first item, the evidence showed that the plaintiff agreed to pay the said contractor $1,700 as damages for the delay caused by the defendant's breach and gave its note therefor; but that item included $1,400 as estimated damages sustained by the contractor by being prevented from doing work on other contracts. Obviously that item was too remote to be included.

[4] There was evidence, however, tending to show that the contractor was put to an extra expense of $300, paid to the workmen when idle and waiting for more brick to be delivered. The defendant's breach of contract was the proximate cause of that damage, and it must be presumed to have been within the contemplation of the parties when the contract was made. It was, therefore, error to dismiss the complaint.

[5] As to the last item of damage, the defendant must have known that a delay in the completion of the building would deprive the plaintiff of the use of the property during such delay. Such damage, if shown, was the direct and natural result of the defendant's breach. There is one difficulty, however, in the proof on that head, resulting from the fact that the building was not completed and ready for occupancy until October 1, 1910, and it would not have been completed

in any event until some time in the summer of 1910. The delay in delivering the brick did not necessarily cause a like delay in the completion of the building, though it doubtless impeded the other work to some extent. Proof of the yearly rentals did not establish the loss sustained by the plaintiff in not having the building ready for occupancy until October 1, 1910, instead of some time in July or August. To justify a recovery on that head, there must be evidence from which a jury can find, not necessarily with mathematical accuracy, the extent of the ultimate delay in the completion of the building caused by the defendant's breach and the usable value of the property or the rentals lost during that time.

The judgment should be reversed, and a new trial granted, with costs to appellant to abide the event. All concur.