NORWICH PHARMACAL COMPANY, Respondent, *v.* WILLIAM M. BARRETT, as President of the ADAMS EXPRESS COMPANY, Appellant.

Third Department, June 19, 1923.

Judgments — summary judgment — action for damages for loss of and injury to goods in transit is not action to recover debt or liquidated demand — summary judgment cannot be granted under Rules of Civil Practice, rule 113.

Summary judgment cannot be granted to the plaintiff under rule 113 of the Rules of Civil Practice in an action to recover damages for injury to and loss of goods in transit since the action is not one to recover a debt or liquidated demand arising on a contract, within the meaning of said rule.

Third Department, June, 1923.     [Vol. 205

APPEAL by the defendant, William M. Barrett, as president, etc., from an order of the Supreme Court, made at the Chenango Special Term and entered in the office of the clerk of the county of Chenango on the 5th day of January, 1923, granting plaintiff's motion for summary judgment, and also from the judgment entered in said clerk's office on the same day pursuant to said order.

*Stockton & Stockton* [*Nelson P. Bonney* of counsel], for the appellant.

*James S. Flanagan* [*James P. Hill* of counsel], for the respondent.

HINMAN, J.:

This action in which summary judgment under rule 113 of the Rules of Civil Practice has been granted was brought to recover damages against the defendant as president of the Adams Express Company for the value of goods delivered to said express company for transportation, which the complaint alleges were either lost or damaged in transit through the negligence, carelessness, inattention and omission of said Adams Express Company. The complaint contains fourteen causes of action. Five are for loss or damage of merchandise shipped by outside parties to the plaintiff; nine arise on account of shipments from the plaintiff to its customers, as to each of which the plaintiff sues as the owner of the claim under an assignment thereof by the consignee to the plaintiff. With these exceptions the various causes of action are substantially similar as alleged in the complaint. In each cause of action after alleging suitable allegations as to the plaintiff as a corporation existing under the laws of the State of New York and having its principal place of business in this State and that the defendant is the president of the Adams Express Company, an unincorporated association having its principal place of business in this State and being engaged as a common carrier, it alleges a delivery of goods to the defendant carrier and an agreement to safely carry and deliver the same in accordance with its published schedule of tariff rates; that said express company did not safely carry and deliver the same but carelessly and negligently conducted itself so that said goods were never delivered to the consignee or were delivered in such condition as to be of no value to the consignee; that the goods when so delivered to the express company were reasonably worth a sum stated in the complaint, the damage of the plaintiff, which damage was the proximate result of the negligence, carelessness and inattention of the express company; that a claim for such loss was made in writing to the carrier at the point of delivery within four months after the shipment and that the express company has not paid or satisfied said claim.

The defense as to each cause of action was, *first*, a denial of any knowledge or information sufficient to form a belief as to the allegations of the complaint except as to the identity of the defendant as the president of said express company, its principal place of business and that it is engaged in the business of a common carrier. The answer as to each cause of action also included separate defenses alleged on information and belief, constituting a denial, in the case of all of the shipments, that notice of the loss or damage was served on the defendant within four months from the date of shipment and in case of part of the shipments alleging that there were false statements by the shipper as to the value of said shipments. As to the separate defense of false statements as to value, the plaintiff replied denying said allegations of the answer and alleging that the value in each case was stated to the representatives of the express company.

Upon this state of the pleadings a motion was made by the plaintiff for an order striking out the defendant's answer and for an order directing summary judgment in favor of the plaintiff for the amount demanded in the complaint under rule 113 of the Rules of Civil Practice. The plaintiff presented two affidavits in support of the motion, one by an officer of the plaintiff, claiming to have knowledge as to the condition of incoming shipments and supervision over shipment of goods by the plaintiff and another by the attorney for the plaintiff. The defendant contented itself in presenting an affidavit by its attorney which did not controvert the facts set forth in the affidavits presented on behalf of the plaintiff but tended only to indicate that the plaintiff's affidavits were not based upon that personal knowledge of the facts alleged in the complaint which is required by rule 113. The power of the court upon application for summary judgment " ' should be exercised with care, and not extended beyond its just limits.' " (*General Investment Co.* v. *Interborough R. T. Co.*, 235 N. Y. 144.) We think that the power of the court was exercised in this case with doubtful propriety considering the affidavits presented by the plaintiff and the doubtful probabilities as to whether the affiants for the plaintiff had the personal knowledge which the rule requires. We have decided, however, to reverse this order upon the ground that rule 113 does not apply to an action of this character. We do not think it is a cause of action " to recover a debt or liquidated demand arising \* \* \* on a contract, express or implied, sealed or not sealed," within the purview of rule 113.

Rule 113 of our Rules of Civil Practice is based on similar rules in the English Rules of the Supreme Court. (Order 3, rule 6, and order 14, rule 1.) As stated by Mr. Justice McAvoy in *Wile* v. *Nassau Smelting & Refining Works, Ltd.* (205 App. Div. 657),

"Those Rules generally are a part of and were adopted pursuant to the English Supreme Court of Judicature Act, 1875, as amended (38 & 39 Vict. chap. 77, as amd.; *Garnett* v. *Bradley,* L. R. [1898] 3 App. Cas. 964; *Longman* v. *East,* L. R. [1877] 3 C. P. D. 156), which Act, together with said Rules, is here known as the English Practice Act." It was originally thought by the English practitioners that the words "debt or liquidated demand" were "applicable to a definite sum of money which would formerly have been recoverable in the old common law action of debt in its most technical form." (*Workman, Clark & Co., Ltd.,* v. *Lloyd Brazileno,* L. R. [1908] 1 K. B. 968, 981.) The Court of Appeal, however, in that case decided that the operation of the English rules above cited was not confined to cases in which the old action of debt in its technical form would have been maintainable. The court held in that case that it could see no reason for excluding from the operation of the English rule 6 of order 3 "any action falling under any of the eight common indebitatus counts, which is brought on an executed consideration for a fixed sum agreed to be paid for such execution." In that case there was an expressed contract to pay a stated sum of money for the building of a ship by installments at certain stages of the building, the first installment to be paid when the keel was laid, and it was held that rule 1 of order 14, providing for summary judgment on writ of summons specially indorsed under rule 6 of order 3, could apply to such installments when due notwithstanding the fact that an action of debt would not formerly lie for the payment of an installment agreed to be paid as part of a larger sum, the whole of which had not become due. The action of debt at common law was an appropriate remedy to enforce a bill or note, an account stated and obligations of record such as a judgment. The term "debt" was also considered at the common law as including those obligations upon which *indebitatus assumpsit* would lie "as for use and occupation, or for real property sold, or goods sold, or for personal services, or for money loaned, paid, had and received, or for interest, or for some other pre-existing debt on simple contract, incurred at the defendant's request." (1 Chitty Pleading [16th Am. ed.], 352.) The term "debt" was also considered at common law as including a demand upon a *quantum meruit* for work, labor and materials furnished and upon a *quantum valebat* for goods sold and delivered. We think the idea of a debt is that it is founded on a contract, express or implied, to pay money in a certain sum or which can readily be reduced to a certainty as distinguished from a claim for damages arising out of a breach of contract or the violation of some duty. In the case of a bailment the essential feature of the contract is an obligation to

safely deliver the goods rather than an obligation to pay money, and we are convinced that an action to recover damages for an alleged failure to safely carry and deliver merchandise is not an action to recover a " debt " within the meaning of rule 113. Neither is it an action to recover a " liquidated demand " within the meaning of that rule. Bouvier's Law Dictionary (Vol. 2 [Rawle's Rev.], 261) defines "liquidated damages " as follows: " Damages the amount of which has been determined by anticipatory agreement between the parties. Damages for a specific sum stipulated or agreed upon as part of a contract, as the amount to be paid to a party who alleges and proves a breach of it." Bouvier defines " liquidated debt " as follows: "A debt is such when it is certain what is due and how much is due." The same work defines "liquidated demand " as follows: " A demand the amount of which has been ascertained or settled by agreement of the parties, or otherwise." The cause of action alleged in the complaint in this action would not come within the meaning of the term " liquidated demand." It is an action to recover damages for the alleged failure of the defendant to safely carry and deliver certain merchandise delivered to it for transportation as a common carrier and in all such actions the issues usually raised, amongst other things, are the value of each of the shipments, the cause of the loss or damage as to which the company is clearly entitled to show, if true, that loss or damage was not due to the failure of the company but was from causes outside of its control or that the shipments were actually delivered in good condition and that the loss or damage occurred after leaving its custody. It is essentially an action to recover for unliquidated damages arising out of neglect to safely carry or to carry with reasonable diligence and for the neglect so to do the carrier is liable only for the real damages sustained by the shipper or consignee whatever they may be proved to be. (*Scovill* v. *Griffith,* 12 N. Y. 509.) A breach of such a contract of bailment is not founded upon an obligation to pay money but rather an obligation to safely deliver the goods, and while an appropriate remedy therefor at common law might be an action of assumpsit, it would not be upon a count of *indebitatus assumpsit.* Not every common-law action in assumpsit is within the purview of rule 113. (*Poland Export Corporation* v. *Marcus,* 204 App. Div. 302.) We think that these applications for summary judgment under that rule should not be extended beyond an action for debt or for one of those counts in *indebitatus assumpsit,* where the action is brought " on an executed consideration for a fixed sum agreed to be paid for such execution." (*Workman, Clark & Co., Ltd.,* v. *Lloyd Brazileno, supra,* 978.) The action in question

48

is one essentially for unliquidated damages and it has been held that the words " debt or liquidated demand " do not extend to unliquidated damages, whether in tort or in contract, even though the measure of such damages be named at a definite figure. ( *Knight v. Abbott,* L. R. [1882] 10 Q. B. D. 11; English Rules of the Supreme Court, order 3, rule 6; White, King & Stringer's The Annual Practice 1923, pp. 13, 16.) We, therefore, conclude that this cause of action does not come within the rule permitting an application for summary judgment.

The order and judgment should be reversed, with costs.

H. T. KELLOGG, Acting P. J., VAN KIRK and HASBROUCK, JJ., concur.

Order and judgment reversed upon the law, with costs.